IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

| | |
|---|---|
| HARVEY N. PUCKETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:04-0320 |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case is presently pending before the Court on cross-Motions for Judgment on the Pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Harvey N. Puckett (hereinafter referred to as "Claimant"), filed an application for DIB on September 10, 2001, alleging disability as of May 9, 2001, due to back and shoulder injuries. (Tr. at 66-68, 46, 51.) The claims were denied initially and upon reconsideration. (Tr. at 46-49, 51-52.) On December 30, 2002, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 53.) The hearing was held on June 3, 2003, before the Honorable Richard J. Maddigan. (Tr. at 365-81.) By decision dated July 25, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 18-28.) The ALJ's decision became the final decision of the Commissioner on January 28, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 6-8.) Claimant filed the present action seeking judicial review of the administrative decision on April 1, 2004, pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2004). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings,

has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 22.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of "back, shoulder, and some difficulties involving the left hand related to his left shoulder injury." (Tr. at 23.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 23.) The ALJ then found that Claimant had a residual functional capacity for sedentary work with additional limitations, including a sit/stand option. (Tr. at 25.) The ALJ determined that Claimant would also be limited to work which would not require him to use his left arm to reach overhead; could only occasionally perform postural activities; and should avoid vibrations and hazards. (Tr. at 25.) As a result, Claimant could not return to his past relevant work. (Tr. at 25.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as food checker and telephone worker, which exist in significant numbers in the national economy. (Tr. at 26.) On this basis, benefits were denied. (Tr. at 26-28.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

Claimant's Background

Claimant was born on October 26, 1965, and was 37 years old at the time of the administrative hearing. (Tr. at 66.) Claimant completed the eleventh grade. (Tr. at 81.) In the past, he worked as an automobile body painter and welder. (Tr. at 76.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below as it relates to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because: (1) the ALJ erred in assessing Claimant's pain and credibility; and (2) the ALJ erred in submitting a hypothetical question to the Vocational Expert at the administrative hearing and in relying upon the Vocational Expert's testimony. The Commissioner asserts that the ALJ's decision is supported by substantial evidence. As the undersigned finds the first argument determinative of the outcome, the remaining argument is not addressed.

Pain and Credibility Assessment

Claimant argues that the ALJ erred in assessing his pain and credibility. Claimant focuses on the fact that the ALJ relied upon an erroneous report from Claimant's treating physician which

indicated that Claimant was not using his prescribed pain medication and was apparently "drug seeking." The Commissioner contends that this argument is without merit.

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2004); SSR 96-7p; see also Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Craig, 76 F.3d at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

> > (iii) Precipitating and aggravating factors;
>
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2004).

> SSR 96-7p repeats the two-step regulatory provisions:
>
> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to

engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must

consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In the instant case, the ALJ determined that Claimant suffered from "back, shoulder, and some difficulties involving the left hand related to his left shoulder injury," which were severe impairments. (Tr. at 23.) The ALJ summarized the medical evidence of record and stated that in assessing Claimant's residual functional capacity (RFC), he "considered all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 404.1529, and

Social Security Ruling 96-7p." (Tr. at 23.) The ALJ also stated "[t]he undersigned also considered that physician's opinion"; however, it is unclear of which opinion he speaks. (Tr. at 23.) Nowhere in the opinion does the ALJ list the requisite factors to consider when assessing a claimant's pain and credibility.

> After reviewing the medical evidence, the ALJ stated as follows:
>
> Given the MRI and X-ray findings showing mild arthritis and disc bulging at the L-3--L4 levels of the lumbar spine, the claimant's complaints about pain in the upper lumbar region radiating to the tailbone and numbness in the legs are magnified and not credible, since they are inconsistent with the medical evidence.

(Tr. at 24.) The ALJ further stated that at the hearing, "claimant essentially took the position that his pain is so severe that he isn't able to sit, stand, concentrate, etc." (Tr. at 25.) The ALJ found, however, that "the medical evidence, including observations medical personnel have made regarding the claimant's ability to follow the directions given him by both treating and examining sources, supports the conclusion that he is exaggerating his symptoms." (Tr. at 25.) Further, the ALJ notes that Claimant was prescribed Oxycontin and Amitriptyline from Dr. Morgan at Ace Medical, but that a 2002 report indicated that a drug screening detected no evidence of oxycodone in Claimant's system and Dr. Morgan terminated his treatment. (Tr. at 25.) On the basis of this evidence, the ALJ concluded that Claimant's "reports of pain were exaggerated for purposes consistent with drug seeking behavior[, and] [h]is reports are unreliable and given little weight." (Tr. at 25.)

The ALJ's pain and credibility analysis in the instant case appears to violate the methodology set forth in Craig by rejecting Claimant's allegations of pain due solely to the lack of objective medical evidence of the pain. The ALJ completely fails to address other evidence of record, including the factors set forth in the applicable law and Regulations. Although the ALJ found that Claimant suffered from severe impairments, which could be enough to satisfy the threshold

determination that there were impairments capable of causing the pain alleged, there is no adequate analysis of the intensity and persistence of Claimant's alleged pain viewed in conjunction with the requisite factors. The ALJ completely fails to discuss Claimant's daily activities; the type, dosage, effectiveness, and side effects of pain medication; measures other than medication used to relieve pain; specific functional limitations; or other treatment aside from medication used to relieve pain. At the administrative hearing, the ALJ engaged in no specific questioning of the Claimant regarding his pain and other symptoms, although Claimant's attorney did ask some questions about Claimant's shoulder pain. (Tr. at 376-79.) Notably, Claimant was prescribed a strong narcotic pain killer, oxycodone, which the ALJ failed to address.[1] Claimant's subjective complaints of pain and precipitating/aggravating factors are discussed in Dr. Brown's 2002 report, but the ALJ does not mention these complaints in his decision. (Tr. at 343-44.)

The ALJ relied heavily upon the indication from Dr. Morgan that Claimant was not taking his prescribed oxycodone, and used this report to determine that Claimant exaggerated his complaints of pain for purposes of "drug seeking" and was therefore not reliable. (Tr. at 25.) As Claimant points out, however, Dr. Morgan's report and drug screen were later determined to be in error and Dr. Morgan wrote a letter to this effect, which was included in the record as evidence submitted to the Appeals Council. (Tr. at 358-60.) Dr. Morgan's letter dated August 28, 2003 states that Claimant's drug screens in fact were within normal limits and have shown the presence of oxycodone. (Tr. at 359.) Dr. Morgan stated that he did not believe that Claimant was exaggerating his symptoms for

---

[1] Claimant was prescribed Oxycontin, a controlled-release oral formulation of oxycodone hydrochloride indicated for the management of moderate to severe pain when a continuous, around-the-clock analgesic is needed for an extended period of time. Physician's Desk Reference 2818 (2005).

purposes of seeking medication. (Tr. at 359.)

The ALJ failed to properly assess Claimant's pain and credibility using the two-step evaluation mandated by the applicable law and Regulations. The ALJ failed to discuss the pertinent evidence using the factors set forth in the Regulations. Despite his findings regarding Claimant's lack of credibility, however, the ALJ limited Claimant to sedentary work with a sit/stand option and other limitations. The Court finds that a more thorough explanation for the ALJ's determination is warranted, along with a proper pain analysis. Additionally, the ALJ relied heavily upon the erroneous report of Dr. Morgan to find that Claimant exaggerated his symptoms merely to seek pain medication. Although the Court is remanding the case essentially for a more thorough pain analysis, it should be considered on remand that Dr. Morgan's report was admittedly in error and Claimant was apparently taking his medication as prescribed. (Tr. at 359.)

Additionally, although Claimant does not raise this argument, the Court notes that the ALJ failed to specify the frequency of Claimant's need to alternate sitting and standing. At the administrative hearing, the ALJ simply asked the Vocational Expert ("VE") to consider a person of Claimant's age, education, and work experience who would be limited to sedentary work with a sit/stand option, occasional postural limitations, avoidance of hazards and vibrations, and no overhead reaching. (Tr. at 374-75.) Without knowing the frequency of the need to alternate sitting and standing, the VE identified jobs which such a person could perform. (Tr. at 375, 379-80.)

Social Security Ruling ("SSR") 96-9p provides as follows regarding a sit/stand option for an individual with a sedentary Residual Functional Capacity ("RFC"):

> Alternate sitting and standing: An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The

> extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, *7. SSR 96-9p notes that sedentary work "represents a significantly restricted range of work," and that "[i]ndividuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." SSR 96-9p, 1996 WL 362208 * 3.

Although the ALJ consulted a vocational resource by utilizing a VE, he failed to make the RFC specific as to the frequency of the need to alternate sitting and standing. The ALJ did not question Claimant during the administrative hearing regarding his need to alternate sitting and standing. The Claimant testified that he did not know if he could perform a job in which he would be sitting most of the time with the opportunity to sit or stand. (Tr. at 370.) He testified that sitting bothered his tailbone and his hips and that he dealt with the pain simply through the use of medication. (Tr. at 370.) The ALJ in this case limited a younger individual to sedentary work with restrictions, thereby indicating serious functional limitations. On remand, the ALJ should also consider the frequency of the Claimant's need to alternate sitting and standing and should make a specific finding in the RFC.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **GRANTED insofar as it requests remand and is otherwise DENIED**; Defendant's Motion for Judgment on the Pleadings is **DENIED**; the final decision of the Commissioner is **VACATED**; this matter is **REMANDED** to

the Commissioner for further proceedings consistent with this Memorandum Opinion; and this case is **DISMISSED** from the active docket of the Court.

The Clerk of this Court is directed to provide copies of this Memorandum Opinion to all counsel of record.

ENTER: September 29, 2005.

R. Clarke VanDervort
United States Magistrate Judge